```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
                                                    04 Civ. 5494 (WCC)
VIRGINIA LOUGHMAN and MICHAEL HOULIHAN, :
individually, and on behalf of all                      ECF CASE
others similarly situated,              :

                    Plaintiffs,         :

        - against -                     :         OPINION
                                                  AND ORDER
UNUM PROVIDENT CORPORATION, UNUM LIFE   :
INSURANCE COMPANY OF AMERICA, FIRST
UNUM LIFE INSURANCE COMPANY and         :         (Consol. Actions:
COLONIAL LIFE & ACCIDENT INSURANCE                04 Civ. 6510 (WCC)
COMPANY,                                :         05 Civ. 2338 (WCC))

                    Defendants.         :

- - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                    HORWITZ, HORWITZ & PARADIS
                    28 West 44th Street, 16th Floor
                    New York, New York 10036

PAUL O. PARADIS, ESQ.
GINA M. TUFARO, ESQ.                                    - and -

   Of Counsel

                    QUADRINO & SCHWARTZ, P.C.
                    666 Old Country Road, 9th Floor
                    Garden City, New York 11530

RICHARD J. QUADRINO, ESQ.
EVAN S. SCHWARTZ, ESQ.
MICHAIL Z. HACK, ESQ.                                   - and -

   Of Counsel

                    LAW OFFICES OF PETER G. EIKENBERRY
                    74 Trinity Place, Suite 1609
                    New York, New York 10006

PETER G. EIKENBERRY, ESQ.

   Of Counsel                            **Attorneys for Plaintiffs**


                    **Copies E-Mailed to Counsel of Record**

**A P P E A R A N C E S :  (continued)**

                                        PIERCE ATWOOD LLP
                                        One Monument Square
                                        Portland, Maine 04101

WILLIAM J. KAYATTA, JR., ESQ.
NIKOLAS P. KEREST, ESQ.                         - and -

     Of Counsel

                                        BEGOS & HORGAN, LLP
                                        Seven Pondfield Road
                                        Bronxville, New York 10708

PATRICK W. BEGOS, ESQ.

     Of Counsel                            **Attorneys for Defendants**

**CONNER, Senior D.J.:**

Plaintiffs Michael Houlihan and Virginia Loughman bring this purported class action against defendants UnumProvident Corporation, Unum Life Insurance Company of America, First Unum Life Insurance Company and Colonial Life and Accident Insurance Company (collectively, "Unum"). In their Second Amended Complaint, plaintiffs allege that Unum: (1) wrongfully terminated Houlihan's long-term disability ("LTD") benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, *et seq.*; (2) wrongfully withheld benefit payments accrued by Houlihan and similarly situated individuals during their entire period of disability, including the so-called "elimination period"[1] set forth in their ERISA-governed LTD policies; (3) breached its contract to provide LTD benefits to Loughman and other similarly-situated individuals by wrongfully withholding such benefits; and (4) breached its LTD benefits contract with Loughman and similarly-situated individuals by failing to provide benefits accrued during their entire period of disability, including their respective policies' elimination periods. Unum now moves to dismiss those Counts of plaintiff's Second Amended Complaint that seek payment for benefits accrued during the elimination periods provided under their respective policies, contending that no such benefits are due. Plaintiffs move to strike the Affidavits of William Bradley and Stanley Wojtowicz and the Declaration of John Rowland submitted in support of Unum's motion, arguing that the authors lack personal knowledge of certain information to which they attest regarding the drafting and intended meaning of the LTD policies. For the reasons that follow Unum's motion is

---

[1] As detailed *infra*, the "elimination period" in a LTD benefits policy is a period of time following the onset of a disability (180 days in the present case) during which no benefits are paid. (*See* 2d Am. Complt., Exs. A & B.) Both plaintiffs were provided by their employers with short-term disability ("STD") insurance policies in order to provide coverage during their LTD policies' elimination period.

granted and plaintiffs' motions are denied as moot.[2]

## BACKGROUND

The record reveals the following facts. Houlihan was employed by Chubb & Son, Inc., which purchased an LTD policy from Unum for the benefit of its employees in July 1995. (Pls. Mem. Opp. Summ. J. at 3.) Loughman's employer, the New Rochelle Board of Education, in accordance with its collective bargaining agreement with the Federation of United School Employees, purchased an Unum LTD plan for its employees in September 1993.[3] (*Id.*)

The Policies, which are substantially similar, provide for the payment of benefits only in the event that an employee suffers a long-term disability and, consequently, contain language establishing an elimination period. *See supra*, note 1. Specifically, the Policies both provide for a 180-day elimination period, which they define as: "a period of consecutive days of disability for which no benefit is payable. The elimination period . . . begins on the first day of disability . . . ." (*See* 2d Am. Complt., Exs. A & B.) The section of the Policies detailing payment of benefits provides:

> When [Unum] receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, [Unum] will pay the insured a monthly benefit after the end of the elimination period. The benefit will be paid for the period of disability if the insured gives [Unum] proof of continued . . . disability; and . . . regular attendance of a physician.

(*Id.*)

---

[2] Because we conclude that the Policies unambiguously state that plaintiffs do not accrue benefits during the elimination period, we need not consider the parol evidence offered in the affidavits plaintiffs now move to strike. Accordingly, plaintiffs' motions are denied as moot.

[3] We refer to Houlihan and Loughman's LTD policies collectively as the "Policies."

Plaintiffs became disabled and sought benefits pursuant to the Policies. In the Counts relevant to the present motion, plaintiffs seek benefits that they contend were accrued during the elimination period. Unum denied their requests on the ground that the Policies expressly preclude the payment of benefits during the elimination period. Nonetheless, plaintiffs contend that the language in the benefits section stating that "[t]he benefit will be paid *for the period of disability*" means that, once the elimination period has run, a policyholder is entitled to receive retroactive benefits for the prior 180 days of disability.

## DISCUSSION

I. **Legal Standard**

    A. **Summary Judgment Standard**

Summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-50 (1986). A fact is material only if, based on that fact, a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v.*

3

*Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nevertheless, as one court explained:

> [S]ummary judgment must be granted against a party in instances when such party fails to adequately establish an essential element on which it bears the burden of proof. . . . The non-moving party may not rest upon unsubstantiated allegations, conclusory assertions or mere denials of the adverse party's pleading, but must set forth and establish specific facts showing that there is a genuine issue for trial. . . . A metaphysical or other whimsical doubt concerning a material fact does not establish a genuine issue necessitating a trial. . . . The mere existence of a scintilla of evidence supporting the non-movant's case is insufficient to defeat a motion for summary judgment.

*Brooks v. Di Fasi*, 1997 U.S. Dist. LEXIS 11162, at *6-7 (W.D.N.Y. July 30, 1997) (internal quotation marks and citations omitted).

### B. ERISA Review Standard

In *Firestone Tire and Rubber Company v. Bruch*, which addressed "the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under ERISA," the Supreme Court determined that such a review should be examined under a "*de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 105, 115 (1989); *see also Fay v. Oxford Health Plan*, 287 F.3d 96, 103-04 (2d Cir. 2002) ("[A] denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.") (citing *Bruch*, 489 U.S. at 115). In the present case, only Houlihan's plan afforded the administrator discretionary authority to determine eligibility for benefits. (*See* 2d Am. Complt., Ex. B.) Loughman's plan, by contrast, was established by a

4

governmental body, and thus is exempt from ERISA's provisions. *See* 29 U.S.C. § 1003(b); *see also Roy v. Teachers Ins. & Annuity Ass'n*, 878 F.2d 47, 49 (2d Cir. 1989). Nevertheless, in the present case, our standard of review is of little relevance, as plaintiffs' claims must fail even when reviewed *de novo* because they are barred by the plain language of the Policies.

## II. Analysis

### A. Construction of the Policies' Language

"ERISA plans are construed according to federal common law." *Fay*, 287 F.3d at 104 (citing *Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98, 107 (2d Cir. 1991)). The federal common law governing ERISA "embodies common-sense canons of contract interpretation." *Brooke v. Home Life Ins. Co.*, 864 F. Supp. 296, 299 (D. Conn. 1994). Thus, courts review ERISA plans within the context of the entire agreement, "giving terms their plain meanings." *Fay*, 287 F.3d at 104; *see also U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 571-72 (2d Cir. 1991). "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined *the context of the entire . . . agreement*." *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994) (internal quotation marks and citations omitted; emphasis added). Therefore, a court may not create an ambiguity by "[s]training a contract's language beyond its reasonable and ordinary meaning." *Swensen v. Colonial Life Ins. Co. of Am.*, 1993 U.S. Dist. LEXIS 13098, at *7 (S.D.N.Y. Sept. 22, 1993). "Nor may an ambiguity be found where the contract has a definite meaning, and where no reasonable basis exists for a difference of opinion about that meaning." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 149 (2d Cir. 1993).

5

LTD plans not governed by ERISA are subject to state contract law,[4] and, as with Federal common law,

> In interpreting a contract under New York law, "words and phrases . . . should be given their plain meaning," and the contract "should be construed so as to give full meaning and effect to all of its provisions." *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (citation and internal quotation marks omitted). "[A]n interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" *Id.* at 124 (quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (internal quotation marks omitted)).

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005). A contract is unambiguous when its language has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (internal quotation marks and citations omitted). In other words, "[a] contract is not ambiguous where there is no reasonable basis for a difference of opinion." *Red Rock Commodities, Ltd. v. Standard Chartered Bank*, 140 F.3d 420, 424 (2d Cir. 1998). Under both federal and New York law, "the initial interpretation of a contract is a matter of law for the court to decide." *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal quotation marks and citations omitted); *Fay*, 287 F.3d at 104.

In the present case, plaintiffs' claims hinge on their selective reading of a provision of the Policies outside the context of the Policies as a whole. Specifically, plaintiffs construe the phrase "[t]he benefit will be paid for the period of disability" to mean that they are entitled to benefits for *the entire* period in which they are disabled, regardless of other language in the Policies limiting the

---

[4] Loughman's LTD policy expressly states that it is governed by New York law.

period for which benefits must be paid. Read in a vacuum, the aforementioned phrase appears to support plaintiffs' claims. Their argument breaks down, however, upon inspection of other pertinent provisions.

As stated previously, the Policies expressly state in their definition sections that the elimination period is "a period of [180] consecutive days of disability *for which no benefit is payable*[,]" beginning on the first day of disability. (*See* 2d Am. Complt., Exs. A & B) (emphasis added).) Conversely, the language proffered by plaintiffs appears in a section of the Policies that addresses what a policyholder must show in order to establish that he is disabled. The focus of this provision is not the scope of benefits, but the proof that a policyholder must submit to establish that he is entitled to them.[5]

"It is a fundamental rule of contract construction that specific terms and exact terms are given greater weight than general language. . . . Indeed, even where there is no true conflict between two provisions, specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate." *New York ex rel Spitzer v. St. Francis Hosp.*, 289 F. Supp. 2d 378, 386 (S.D.N.Y. 2003) (Conner, J.) (internal quotation marks and citations omitted). Thus, read together, the Policies' various provisions clearly state that: (1) an elimination period must run before benefits

---

[5] Specifically, the Policies state:
When [Unum] receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, [Unum] will pay the insured a monthly benefit after the end of the elimination period. The benefit will be payable for the period of disability if the insured gives to [Unum] proof of continued:
1. disability; and
2. regular attendance of a physician.
The proof must be given upon request at the insured's expense.
(2d Am. Complt., Exs. A & B.)

7

begin to accrue; (2) after that period, plaintiffs are entitled to payment for the time that they can prove they remain disabled (subject to limitations on maximum benefits); and (3) no benefits are payable *for* the elimination period itself. Significantly, the elimination period is not called a "deferral" or "qualification" period, and the language defining it does not state that it is a period "*during* which no benefit is payable." Rather, the use of the word "elimination"[6] and the characterization of the period as one "*for* which no benefit is payable" (2d Am. Complt., Exs. A & B. (emphasis added)), clearly indicates that no benefits accrue during that period. Read as a whole, the Policies can have no other reasonable meaning.[7]

Moreover, although we have determined that the Policies' plain language precludes the accrual of benefits during the elimination period, we note that even under less compelling circumstances, we would conclude that Unum's construction of the Houlihan policy as precluding such benefits was reasonable. It is well-established in this Circuit that "where[, as here,] the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (internal quotation marks omitted). "Under the arbitrary and capricious standard of review, we may overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 442 (internal quotation marks and citations omitted). As our conclusion with regard to the

---

[6] Mirriam-Webster's Dictionary defines "elimination," in relevant part, as: "remov[al] from consideration." Mirriam-Webster's Online Dictionary, available at http://m-w.com/dictionary/eliminate.

[7] Additionally, we note that our interpretation of the Policies, although grounded on their plain language, is supported by the fact that both plaintiffs were provided by their employers with STD policies to compensate them for disabilities within the elimination period.

plain meaning of the Policies indicates, Unum's interpretation of the Houlihan Policy fell well within this easily-satisfied standard.[8]

### B. <u>Collateral Estoppel</u>

We disagree with plaintiffs' assertion that we are bound by the doctrine of collateral estoppel to follow United States District Judge Charles Brieant's decision in *Lauder v. First UNUM Life Ins. Co.*, in which he held that similar language in a Unum policy entitled a beneficiary to benefits accrued during the elimination period. In *Lauder v. First UNUM Life Ins. Co.*, 55 F. Supp. 2d 269 (S.D.N.Y. 1999), *aff'd in part, vacated and remanded in part by* 284 F.3d 375 (2d Cir. 2002), then-United States District Judge Barrington Parker, faced with identical policy language providing for a ninety-day elimination period, awarded plaintiff damages from the date of disability. 284 F.3d at 378. On appeal, the Second Circuit did not specifically discuss the elimination period, but reversed Judge Parker's award of damages, stating: "[T]he figure arrived at by the court—$95,234—was ordered without any explanation as to the method used to reach it. We are therefore unable to review whether the district court's calculation method was correct." *Id.* at 383.

---

[8] Moreover, we reject plaintiffs' argument that Unum forfeited its right to the deferential abuse of discretion standard because it "fail[ed] to exercise discretion" in construing the Policies' terms. (*See* Pls. Mem. Opp. Summ. J. at 6-7.) In support of this contention, plaintiffs argue only that Unum has consistently declined to provide benefits for the elimination period. Indeed, consistency of interpretation militates *in favor* of a finding of reasonableness:
> To determine reasonableness in an arbitrary and capricious analysis, courts have considered, *inter alia*, (a) whether the defendant has consistently interpreted a term in a plan in a particular way, (b) whether industry practice is consistent with the defendants' interpretation, or (c) whether any legal authority supports their assertion that the interpretation is reasonable.

*Harrison v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 437 (S.D.N.Y. 2006) (internal quotation marks omitted). In any event, Unum's interpretation was legally correct, as it was mandated by the plain language of the Policies.

9

On remand, the matter was assigned to Judge Brieant, as Judge Parker had been elevated to the position of United States Circuit Judge. Following oral argument, Judge Brieant ruled from the bench that

> under the plain meaning [of the policy at issue therein], since [the plaintiff] continued [to be] disabled during the entire elimination period and was disabled at the end of it, she can at the end of the ninety days get paid for the entire period, including the [ninety] days. And if this is not already decided by Judge Parker, which it might well be, I now conclude that that is the fact and . . . she's entitled to get paid for the elimination period.

(Tufaro Decl., Ex. E at 13.) Unum subsequently appealed Judge Brieant's decision to the Second Circuit, which upheld his award of damages. *Lauder v. First UNUM Life Ins. Co.*, 76 F. App'x 348, 350 (2d Cir. 2003) (affirming district court's award of damages, but reversing court's decision not to grant plaintiff attorney's fees). Again, however, the Circuit Court did not address the elimination period issue, and rendered its decision in an unpublished Summary Order, which, according to the Court's Local Rules, has no precedential effect. *See* 2d CIR. R. § 32.1(b).

Significantly, following the issuance of Judge Brieant's oral ruling, there was the following exchange between counsel and the court:

> [Counsel for the plaintiff:] . . . From now on claimants have the right under the holding of Your Honor to receive benefits for [the elimination period].
> THE COURT: Please, there are certain district judges who think that's true. Please read the footnote in Gasperini against the Center for Humanities.
> These findings and conclusions and judgment to be entered, if it survives a further appeal, will be binding upon the parties but it's not binding on any other judge in this district or anywhere else in the country. They can read that policy and they can apply their own views and judgments towards it. So no precedent is ever created in the district court. You wouldn't believe how many people think otherwise. You are not alone in thinking that. Please read Gasperini. It's in a footnote and it's very, very clear.
> So I can't say that you have [benefitted] the rest of the beneficiaries by adjudicating this issue, even if the judgment is affirmed and as they treat the point, or if it's not appealed.

10

(Tufaro Decl., Ex. E at 16-17.) The *Gasperini v. Center for Humanities, Inc.* footnote referred to by Judge Brieant does not address collateral estoppel, but merely states that, as a general matter, a district court's legal conclusion does not bind other judges sitting within the same district. *See* 518 U.S. 415, 431 n.10 (1996) ("If there is a federal district court standard, it must come from the Court of Appeals, not from the over 40 district court judges in the Southern District of New York, each of whom sits alone and renders decisions not binding on the others."). Nevertheless, his reference to the footnote makes clear that Judge Brieant meant to convey that his decision was based on factors unique to the case before him.

In such situations, Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE, tit. 18A § 4465 counsels:

> At least in most circumstances, a ruling by the first court that its judgment should not establish nonmutual preclusion should be honored by later courts without further inquiry. Such rulings are most apt to be made by the first court in response to the same factors that ordinarily enter into the appraisal of a prior opportunity to litigate by later courts, but on the basis of intimate familiarity with the quality of the litigation, the probability of compromise, and the like. Later courts should not be eager to substitute their own remote appraisal of the litigation, simply in hopes of avoiding relitigation or inconsistent results.

Moreover, Judge Brieant's decision conflicts with that of the United States Court of Appeals for the Sixth Circuit, which, when construing the elimination period of a Unum policy, stated:

> Under the express terms of the Plan, no benefits are payable during the "elimination period," which is "a period of consecutive days of disability" beginning on the first day of disability. . . . The Plan specifications state that the "elimination period" is thirty days. Thus, no benefits were owing under the Plan until thirty days after the onset of plaintiff's disability.

*Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 591-92 (6th Cir. 2002). The United States Supreme Court has expressly stated that "[a]llowing offensive collateral estoppel may . . . be unfair to a

11

defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979); *see also LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 434 (2d Cir. 1995) (same); Restatement (2nd) of Judgments § 29 (disfavoring preclusion when "[t]he determination relied on as preclusive was itself inconsistent with another determination of the same issue."). We believe that such unfairness would result here if we did not engage in our own analysis of the relevant language.

Having concluded that defendants are entitled to summary judgment under the plain language of the policy, we need not address plaintiffs' motions to strike the Affidavits of William Bradley and Stanley Wojtowicz and the Declaration of John Rowland, which were offered to support Unum's proposed interpretation of the Policies. The subject Affidavits and Declaration, which address the negotiation and pricing of the Policies, were not relied upon by the Court, which has based its determination solely on the plain language of the Policies.

## CONCLUSION

For all of the foregoing reasons, the motion for partial summary judgment of defendants UnumProvident Corporation, Unum Life Insurance Company of America, First Unum Life Insurance Company and Colonial Life and Accident Insurance Company is granted as to Counts II, III and V of the Second Amended Complaint. The motions of plaintiffs Michael Houlihan and Virginia Loughman to strike portions of the Affidavits of William Bradley and Stanley Wojtowicz and the Declaration of John Rowland are denied as moot. No costs or fees shall be assessed against any party.

SO ORDERED.

Dated: White Plains, New York
February 25, 2008

*[signature]*
Sr. United States District Judge